United States Courts
Southern District of Texas
FILED

NOV 15 2018

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.** |
| | § | |
| **ALFONZO ELIEZER** | § | |
| **GRAVINA-MUNOZ** | § | **18 CR 670** |

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
### (18 U.S.C. § 371 – Conspiracy to Obstruct an Official Proceeding)

### Introduction

At all relevant times, unless otherwise specified:

1.     Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company.   PDVSA and its subsidiaries were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government.   PDVSA and its wholly owned subsidiaries were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

1

2.      Defendant **ALFONZO   ELIEZER   GRAVINA   MUNOZ** ("**GRAVINA**"), a resident of Fort Bend County, Texas, and a naturalized U.S. citizen since in or around 2006, was employed by PDVSA or by wholly owned subsidiaries or affiliates thereof from in or around 1998 until in or around March 2014.   During that time, **GRAVINA** held a number of positions related to the purchase of energy services equipment and services, including purchasing manager. **GRAVINA**'s job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects.   In this role, **GRAVINA** was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

3.      "CO-CONSPIRATOR 1," an individual whose identity is known to the Grand Jury, controlled multiple U.S.-based and international energy and logistics companies that supplied equipment and services to PDVSA.  Beginning in or around March 2014, after GRAVINA was terminated from his employment with PDVSA, CO-CONSPIRATOR 1 hired GRAVINA as an advisor, and GRAVINA signed a contract with one of CO-CONSPIRATOR 1's companies.

4.      "EMPLOYEE A," an individual whose identity is known to the Grand Jury, was employed by CO-CONSPIRATOR 1.   EMPLOYEE A's job responsibilities included handling PDVSA contracts for a logistics company

controlled by CO-CONSPIRATOR 1, as well as tracking purchase orders and bribe payments related to multiple other companies controlled by CO-CONSPIRATOR 1.

5. "OFFICIAL A," an individual whose identity is known to the Grand Jury, was employed by PDVSA, or a wholly owned subsidiary thereof, in the procurement department. OFFICIAL A's job responsibilities including vetting vendors for bidding panels and evaluating quotes for products.

## Background

6. Beginning at least as early as 2012 or 2013, while **GRAVINA** was employed at PDVSA, and continuing until **GRAVINA**'s termination from PDVSA in 2014, **GRAVINA** reached an agreement with CO-CONSPIRATOR 1 for CO-CONSPIRATOR 1 to pay bribes to **GRAVINA** in exchange for **GRAVINA**'s assistance in placing CO-CONSPIRATOR 1's companies on the bidding panels for PDVSA projects, supporting CO-CONSPIRATOR 1's companies before an internal purchasing committee, and providing CO-CONSPIRATOR 1 with inside information about PDVSA projects and bids.

7. During the course of the corrupt scheme, CO-CONSPIRATOR 1 paid more than $230,000 in bribes to **GRAVINA** in order to secure these benefits.

8. Since in or about 2012, the Department of Homeland Security, Homeland Security Investigations ("HSI"), has been conducting a long-running investigation into a large-scale bribery scheme involving PDVSA officials and U.S.

and foreign persons and entities, including possible violations of federal criminal statutes, including violations of the FCPA, Title 15, United States Code, Section 78dd-2(a) and money laundering statutes, Title 18 United States Code, Sections 1956 and 1957. The investigation also involved official proceedings before a grand jury sitting in the Southern District of Texas and the United States District Court for the Southern District of Texas.

9.    On December 10, 2015, **GRAVINA** pleaded guilty to conspiracy to launder money in violation of Title 18, United States Code, Section 371, and making false statements on his federal income tax return in violation of Title 26, United States Code, Section 7206(1).

10.    The factual basis for **GRAVINA**'s plea was the laundering of bribes that **GRAVINA** received from two businessmen based in the United States, Roberto Rincon and Abraham Shiera. However, prior to his plea, **GRAVINA** also admitted to accepting and laundering bribe payments from other individuals and companies, including at least four companies controlled by CO-CONSPIRATOR 1. **GRAVINA** provided federal agents only with the names of those corporate entities; he did not state that they were associated with CO-CONSPIRATOR 1.

11.    **GRAVINA**'s plea agreement was a cooperation plea agreement, and contemplated the possibility that the United States would make a motion under United States Sentencing Guidelines Section 5K1.1 at his sentencing.

12.     Under the terms of his plea agreement, **GRAVINA** agreed to participate in interviews as requested by the United States, and to provide "truthful, complete and accurate information" to government agents and attorneys.

13.     After his plea, and during his employment with COMPANY A, **GRAVINA** met periodically with HSI agents to provide information regarding bribe payments that he had received while employed at PDVSA.

14.     Despite knowing that U.S. government authorities were investigating corruption at PDVSA, and specifically that as of the beginning of 2018 the government was focusing on bribes paid by companies controlled by CO-CONSPIRATOR 1, **GRAVINA** concealed facts about CO-CONSPIRATOR 1's payment of bribes to PDVSA officials in his interviews with the government. In addition, **GRAVINA** informed CO-CONSPIRATOR 1 that U.S. government authorities were investigating CO-CONSPIRATOR 1, and informed CO-CONSPIRATOR 1 about certain facts the U.S. authorities had learned about the methods by which CO-CONSPIRATOR 1 paid and concealed bribes. This led CO-CONSPIRATOR 1 to destroy evidence and to instruct others to destroy evidence.

### The Conspiracy

15.     Beginning in at least January 2018, and continuing through at least July 2018, in the Southern District of Texas and elsewhere, the defendant,

**ALFONZO ELIEZER GRAVINA MUNOZ,**

5

did knowingly conspire, confederate, and agree with CO-CONSPIRATOR 1 and other persons known and unknown to the Grand Jury to commit offenses against the United States, that is: obstructing, influencing, or impeding any official proceeding, or attempting to do so, in violation of Title 18, United States Code, Section 1512(c)(2).

## The Purpose of the Conspiracy

16.     The purpose of the conspiracy was for **GRAVINA** and CO-CONSPIRATOR 1 to conceal a bribery scheme by obstructing and impeding the ongoing investigation into illegal bribe payments paid by CO-CONSPIRATOR 1, with the assistance of EMPLOYEE A and others, to multiple PDVSA officials, including OFFICIAL A.

## Manner and Means of the Conspiracy

17.     The manner and means by which **GRAVINA** and CO-CONSPIRATOR 1 sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

18.     **GRAVINA** would and did meet with CO-CONSPIRATOR 1 at various places, including coffee shops and hotel restaurants, to discuss, among other things, the ongoing U.S. government investigation into corruption at PDVSA.

19.     **GRAVINA** would and did provide CO-CONSPIRATOR 1 with confidential information obtained in **GRAVINA**'s meetings with the government and relating to HSI's investigation, specifically HSI's investigation of CO-CONSPIRATOR 1.

20.     CO-CONSPIRATOR 1, after being informed by **GRAVINA** of the facts relating to the U.S. government's investigation, would and did destroy evidence and instruct others to destroy evidence.

## Overt Acts

21.     On or about January 30, 2018, **GRAVINA** participated in a meeting with the government in which **GRAVINA** learned that the government was interested in bribes paid by CO-CONSPIRATOR 1 to PDVSA officials.

22.     At some point between January 30, 2018, and the meeting described in Paragraph 23, below, **GRAVINA** provided information discussed at the January 30, 2018 meeting with the government to CO-CONSPIRATOR 1.

23.     In or about June or July 2018, CO-CONSPIRATOR 1 met OFFICIAL A in Houston, and told OFFICIAL A that **GRAVINA** told CO-CONSPIRATOR 1 that CO-CONSPIRATOR 1 was being investigated by the government.

24.     In or about June or July 2018, during the same meeting referenced in Paragraph 23 above, CO-CONSPIRATOR 1 instructed OFFICIAL A not to reveal to anyone that **GRAVINA** had provided CO-CONSPIRATOR 1 with information

about the government's investigation, and also instructed OFFICIAL A to destroy emails and other communications regarding the bribery scheme, which OFFICIAL A did.

25.    On or about July 16, 2018, **GRAVINA** participated in another meeting with the government in which **GRAVINA** learned that the government was aware of nicknames used by CO-CONSPIRATOR 1 and EMPLOYEE A to refer to the PDVSA officials to whom they were paying bribes.

26.    In or about the end of July 2018, after **GRAVINA**'s July 16, 2018 meeting with the government, **GRAVINA** met with CO-CONSPIRATOR 1 and informed CO-CONSPIRATOR 1 that the government was aware of the nicknames that CO-CONSPIRATOR 1 and EMPLOYEE A used on the spreadsheets they maintained to keep track of the various PDVSA officials who were receiving bribes from CO-CONSPIRATOR 1.

27.    On or about July 26, 2018, CO-CONSPIRATOR 1 met with EMPLOYEE A in Miami, Florida. CO-CONSPIRATOR 1 told EMPLOYEE A that the government knew about the nicknames that CO-CONSPIRATOR 1 and EMPLOYEE A had assigned to PDVSA officials to whom they were paying bribes and directed EMPLOYEE A to change the nicknames. CO-CONSPIRATOR 1 also instructed EMPLOYEE A to destroy physical and electronic evidence relating to the bribery scheme.

28. On or about July 27, 2018, CO-CONSPIRATOR 1 met OFFICIAL A in Houston and told OFFICIAL A that CO-CONSPIRATOR 1 was in trouble due to the investigation and that CO-CONSPIRATOR 1 was going to Venezuela.

29. On or about July 31, 2018, CO-CONSPIRATOR 1 attempted to flee the United States by purchasing and attempting to take a flight from Miami, Florida, to Caracas, Venezuela, but was arrested at the airport in Miami.

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

SANDRA MOSER
ACTING CHIEF
FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: _____
JOHN P. PEARSON
ROBERT S. JOHNSON
ASSISTANT UNITED STATES
ATTORNEYS

BY: _____
SARAH E. EDWARDS
SONALI D. PATEL
TRIAL ATTORNEYS